**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC ALAN KING | : | |
| | : | |
| Appellant | : | No. 993 MDA 2019 |

Appeal from the Judgment of Sentence Entered April 16, 2019
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000700-2017

BEFORE:   OLSON, J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY OLSON, J.:                                    **FILED JUNE 12, 2020**

Appellant, Eric Alan King, appeals from the judgment of sentence entered on April 16, 2019, as made final by the denial of his post-sentence motion on June 14, 2019.  We affirm.

The trial court thoroughly summarized the underlying facts and procedural posture of this case:

> On or about December 29, 2016, [Appellant] was charged with one [] count each of:  (1) criminal homicide; (2) possession of firearm prohibited; (3) firearms not to be carried without a license; (4) recklessly endangering another person; (5) receiving stolen property; and (6) aggravated assault.[1]  The charge of aggravated assault was subsequently withdrawn by the Commonwealth.  A jury trial was held from February 25, 2019 through March 5, 2019.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2501(a), 6105(a)(1), 6106(a)(1), 2705, 3925(a), and 2702(a)(4), respectively.

. . .

The testimony from the jury trial revealed the following facts[.]  At approximately 12:40 a.m. on December 29, 2016, [police officers from] the City of Harrisburg Police Department were dispatched to OD's Plantation, a local bar, in the area of 16th and Sycamore Streets for a call of shots fired.  Officer Garrett Miller was one of the first patrol officers on scene.  Upon arrival, he observed a male suffering from gunshot wounds on the Sycamore Street side of the bar.  The male informed Officer Garrett that he was shot inside the bar, as well as that he was shot at outside the bar, but did not think he was struck again while outside.  Officer Garrett also noted that the male did not have any type of firearm on his person.  . . .

Officer Stephen Ruff was also one of the first patrol officers to arrive on scene, and established a crime scene perimeter. He observed a male lying east of the bar on Sycamore Street, as well as a vehicle parked on the southeast corner immediately in front of the bar with its windows shot out.

Investigator Duane Pyles arrived on scene at approximately 12:42 a.m. and assisted in securing the crime scene.  When he learned that the victim was in the back of an ambulance, he went to photograph the victim's injuries.  Thereafter, Officer Ruff was directed to ride with the victim in the ambulance on the way to the hospital.  Once they arrived at the hospital, the victim was immediately taken into triage and his clothing removed.  Officer Ruff collected the victim's clothing and noted that a firearm was not one of the items collected from the hospital.

After the victim was transported to the hospital, the remaining officers on scene began to collect evidence. Investigator Pyles spoke with the owner of OD's Planation who informed him that the bar is equipped with a surveillance system - cameras one [] through six [] cover the interior of the bar, and cameras ten [] through [13] cover the exterior and vestibule area of the bar.  The owner was unsure how to use the system; however, [he] permitted Investigator Pyles to use it to review the video footage.  A review of the surveillance footage showed that the entire incident, both

inside and outside of the bar, was captured on video; therefore Investigator Pyles downloaded video from all cameras for the time period of 12:30 to 12:55 a.m. . . .

OD's Plantation was a bar located on the corner of 16th and Sycamore Streets. It has a front door that exits directly onto the southeast corner of the intersection at 16th and Sycamore Streets. The front door opens into a vestibule area with a few steps to another door. Once inside, the bar is directly in front of the door, and beyond the bar area are two [] pool tables. Beyond the pool tables is a rear door that exits onto a ramp that leads down to Cascade Alley.

The surveillance video shows the following: At 00:35:26,[fn.15] [Appellant] enters the bar with two [] individuals, who were subsequently identified as Shanelle Baltimore (hereinafter "Ms. Baltimore") and Hasheem Jacob (hereinafter "Mr. Jacob").

Ms. Baltimore and Mr. Jacob proceed to the bar area while [Appellant] remains near the pool table closest to the rear exit. While in the bar area, it appears the victim, Mr. Jacob, and Ms. Baltimore have a casual interaction. Mr. Jacob and Ms. Baltimore then walk back toward [Appellant] waiting near the pool tables. After briefly conversing, [Appellant] walks toward the bar, stopping to say hello to a friend first, then approaches the victim.

    [fn.15] The video is time-stamped in military time. . . .

The victim, [Appellant], and Mr. Jacob engage in a conversation by the bar area. [Appellant] then walks away leaving the victim and Mr. Jacob engaged in conversation. The victim ends the conversation and returns to the bar when [Appellant] re-engages him in conversation. The conversation again ends, the victim walks away enjoying his drink, and [Appellant] converses with other patrons sitting at the bar. The [trial] court notes that the video shows the victim with one or both of his hands inside his jacket pocket throughout this entire interaction.

At or around 00:39:22, [Appellant] is observed walking back toward the pool tables with Ms. Baltimore and Mr. Jacob while the victim remained at the bar. [Appellant] is with a group

- 3 -

of people near the pool table closest to the rear exit and watches the victim as he walks toward the pool table area. [Appellant] then leans against the pool table closest to the rear exit and appears to remove something from his waistband. When [the video was converted to still photographs, Appellant] is observed to pull a firearm from the right side of his waistband, and then return it to his waistband when the bartender approaches him. Simultaneously, the victim is observed on [the surveillance video] to be walking around and talking to someone on his cell phone.

At or around 00:40:35, the victim is observed returning to the pool table closest to the bar where he engaged in conversation with other patrons with his back to [Appellant] at times. Mr. Jacob is pacing and appears to be keeping an eye on the victim and [Appellant] is leaning on the pool table closest to the rear exit. . . .

At 00:40:50 . . . , Mr. Jacob appears to say something to [Appellant] while looking toward the victim. [Appellant] takes a step back, turns toward the victim then turns back and leans against the pool table with his right hand near his waistband. . . .

At 00:41:06 . . . , Mr. Jacob walks toward [Appellant], [Appellant] uses his right hand to pull a firearm from his waistband, points his firearm at the victim and pulls the trigger. However, it appears [Appellant] forgot to load a bullet into the chamber. [Appellant] cocks the firearm, points it at the victim, and shoots. The victim appears to be unaware that [Appellant] had pointed a firearm at him, does not reach for a weapon, and immediately flees toward the front door upon being hit. At 00:41:26 . . . , the victim is observed at the front door with blood on his right pant leg.

[Appellant] watches the victim run away for a beat, then calmly turns and casually walks out of the rear exit with the firearm in his right hand. [Appellant] exits onto Cascade Alley and makes a right toward 16th Street. He gets into the passenger side of a vehicle driven by Mr. Jacob and fires two [] shots toward the corner of 16th and Sycamore Streets. The vehicle travels north on 16th Street and makes a left onto Sycamore Street. As the vehicle turns left, [Appellant] points

his firearm out of the passenger side window and fires two [] additional shots in the direction of where the victim ran.

Dr. Wayne Ross . . . is a forensic pathologist employed by the Dauphin County Coroner's office. The victim suffered a total of three [] gunshot wounds - the right arm, beneath the lip, and left hip. The right arm had a gunshot wound to the right forearm, near the right wrist area. Dr. Ross classified it [as] a "through-and-through" gunshot wound, meaning that the bullet went clean through the flesh and did not fracture any bones nor lodge in the body. This particular wound would cause a significant amount of bleeding. As for the gunshot wound on the face, Dr. Ross testified that it went "through the right chin, right lip, and entered on the right side, went through the lip, and came out of the lip."

Lastly, the victim had a gunshot wound on his left hip. Dr. Ross testified that the bullet went through the victim's left hip, into his abdomen, through his intestines, and exited through the front of the abdomen on the right side. This wound would cause blood to immediately pour out through the holes where the bullet entered and exited the victim's body. Due to the amount of blood loss, the victim would have suffered hemorrhagic shock. Additionally, bacteria would begin flowing into the abdomen, through the system, and cause an infection or septic shock. Dr. Ross testified that any one of the three [] gunshot wounds could have been the deadly shot.

Trial Court Opinion, 9/20/19, at 1-8 (citations and some footnotes and capitalization omitted).

The jury found Appellant guilty of first-degree murder, possession of a firearm by a prohibited person, firearms not to be carried without a license, and recklessly endangering another person; the jury found Appellant not guilty of receiving stolen property. N.T. Trial, 3/5/19, at 1046-1047. On April 16, 2019, the trial court sentenced Appellant to serve a term of life in prison for his first-degree murder conviction and to serve a consecutive term of five

to ten years in prison for his possession of a firearm by a prohibited person conviction. N.T. Sentencing, 4/16/19, at 1-2.

The trial court denied Appellant's post-sentence motion on June 14, 2019 and Appellant filed a timely notice of appeal. Appellant raises four claims on appeal:

1. Whether the trial court had subject matter jurisdiction to try, convict[,] and sentence [Appellant]?

2. Whether the search warrant of [Appellant's] phone lacks probable cause and is overbroad in violation of the 4th Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution?

3. Whether the trial court abused its discretion by [permitting] improper demonstrative evidence?

4. Whether the trial court abused its discretion by allowing the Commonwealth to present pictures of [Appellant] with a gun to impeach [Appellant's] expert witness?

Appellant's Brief at 5-6 (some capitalization omitted).

We have reviewed the briefs of the parties, the relevant law, the certified record, the notes of testimony, and the opinion of the able trial court judge, the Honorable William T. Tully. We conclude that Appellant is not entitled to relief in this case, for the reasons expressed in Judge Tully's September 20, 2019 opinion. Therefore, we affirm on the basis of Judge Tully's thorough opinion and adopt it as our own. In any future filing with this or any other court addressing this ruling, the filing party shall attach a copy of Judge Tully's September 20, 2019 opinion.

Judgment of sentence affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/12/2020